# IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 1, 2011

Lyle W. Cayce
Clerk

No. 11-20676

WEINGARTEN REALTY INVESTORS, a Texas
Real Estate Investment Trust

Plaintiff-Appellee,

versus

STEWART A. MILLER,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before, DAVIS, SMITH, and PRADO, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

The district court denied a motion to compel arbitration. Defendant Stewart Miller appealed, and the district court denied his motion for a stay pending appeal. Miller appeals the denial of a stay, and plaintiff Weingarten Realty Investors ("WRI") moves for summary affirmance of the denial of the

motion to compel.  We conclude that there is no automatic stay and that under the circumstances of this case, Miller is not entitled to a stay.  The motion for summary affirmance is carried with the case.

## I.

WRI and Miller Sheriden, LLC ("Miller Sheriden"), created a joint venture, and WRI loaned that joint venture $75,000,000 under the Loan Agreement between WRI and the joint venture.  Section 7.21 of that agreement provided that any dispute "arising out of, in connection with, or relating to the Note or any of the other Loan Documents or any transaction provided for therein . . . at the request of any party to the Loan Documents . . . be settled by arbitration . . . ."  Miller did not sign the Loan Agreement individually but did sign a third-party guarantee ("Limited Guarantee") for the loan, on the same day the Loan Agreement was executed, in which guarantee he and Miller Sheriden guaranteed half of the loan.  There is no arbitration clause in the Limited Guarantee, and the Loan Agreement does not list the Limited Guarantee as a Loan Document.

The promissory note was amended twice; both agreements refer to "Loan Documents" as including the guarantees.  The first Loan Modification Agreement restated the maturity date of the loan and redefined the "True Principal Balance."  The second Loan Modification Agreement extended the maturity date.  When the joint venture did not pay the note on the extended maturity date, WRI unsuccessfully sought payment from the guarantors.

WRI sued Miller pursuant to the Limited Guarantee, and Miller sought arbitration.  The district court decided that Miller is not entitled to arbitration because he is not a party to any Loan Document.  On appeal, Miller

argues that we should stay proceedings in the district court until the resolution of his appeal; WRI disagrees. We deny the stay, because Miller fails to show a likelihood of winning on the merits or that the balance of equities tips in his favor.

## II.

Whether an appeal from a denial of a motion to compel arbitration divests the district court of jurisdiction to proceed to the merits is the subject of a circuit split. The Second and Ninth Circuits have held that a stay is not automatic.[1] In *Britton*, the court pointed out that normally, appellate review of a collateral order does not deprive the district court of jurisdiction to proceed to the merits. The court cited the determination in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 21 (1983), that because arbitrability is an issue easily separable from the merits of the underlying dispute, the district court could address the merits while the appellate court reviewed arbitrability. Additionally, the *Britton* court noted that an automatic stay would allow litigants to delay resolution of the matter by filing frivolous appeals. In the absence of an automatic stay, the district court nonetheless retains the power to determine, on a case-by-case basis, whether proceedings should be stayed until the appeal regarding arbitrability has been resolved.

The Seventh Circuit, later joined by the Third, Fourth, Tenth, and Eleventh,[2] has held that a notice of appeal automatically stays proceedings in the

---

[1] *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 53-54 (2d Cir. 2004); *Britton v. Co-Op Banking Group*, 916 F.2d 1405, 1411-12 (9th Cir. 1990).

[2] *Levin v. Alms & Assocs., Ltd.*, 634 F.3d 260, 264-66 (4th Cir. 2011); *Ehleiter v. Grape-*

(continued...)

district court. The Seventh Circuit reasoned in *Bradford-Scott Data Corp. v. Physician Computer Network*, 128 F.3d 504 (7th Cir. 1997), that the underlying claims before the district court are not collateral to the issue presented by an appeal, because the appeal is to determine whether the matter should be litigated in the district court at all. The court was worried about inconsistent handling of the case by the two courts and was concerned that allowing simultaneous proceedings would defeat the speed and cost benefits parties seek from arbitration. *Id.* at 505. These courts analogize arbitrability appeals to appeals regarding double jeopardy, sovereign immunity, and qualified immunity, *see id.* at 506, reasoning that because a district court cannot proceed past these issues when there are interlocutory appeals, it similarly cannot proceed when arbitrability is appealed.

The legal debate turns on *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982). Although appeals transfer jurisdiction from the district court to the appellate court concerning "those aspects of the case involved in the appeal," *id.* at 58, the district court is nonetheless free to adjudicate matters that are not involved in that appeal, *see Alice L. v. Dusek*, 492 F.3d 562 (5th Cir. 2007). At issue here is whether the merits of an arbitration claim are an aspect of a denial of an order to compel arbitration.

The Ninth Circuit interpreted *Griggs* narrowly, holding that because answering the question of arbitrability does not determine the merits of the case, the merits are not an aspect of the case that is involved in the appeal on arbitrability. To the contrary, the Seventh Circuit interpreted *Griggs*

---

[2](...continued)
*tree Shores, Inc.*, 482 F.3d 207, 215 n.6 (3d Cir. 2007); *McCauley v. Halliburton Energy Servs., Inc.*, 413 F.3d 1158, 1160-62 (10th Cir. 2005); *Blinco v. Green Tree Servicing*, LLC, 366 F.3d 1249, 1251-52 (11th Cir. 2004).

broadly, holding that because an appeal on arbitrability concerns whether the case will be heard in the district court at all, the merits in district court are an aspect of the case that is involved in the appeal.

The narrower interpretation better comports with our precedents and the nature of arbitration. "How broadly a court defines the aspects of the case on appeal depends on the nature of the appeal." *Alice L. v. Dusek*, 492 F.3d 563, 565 (5th Cir. 2007) (per curiam). The facts of *Griggs* suggest a narrow interpretation is normally appropriate.

In *Griggs*, a party moved to amend a judgment in the district court and then appealed while that motion was pending. The Court was concerned with the simultaneous exercise of jurisdiction by a district court and a court of appeals, because that could lead to both courts' deciding the same issue—in that case, the judgment. Appeals deprive the district court of jurisdiction, solving this problem. The key is that both courts would be simultaneously trying to answer the same question: whether the judgment was valid. Therefore, an issue in the district court is only an "aspect[] of the case involved in the appeal" if the appeal and the claims before the district court address the same legal question.

Our precedents support this reading. In *Alaska Electrical Pension Fund v. Flowserve Corp.*, 572 F.3d 221 (5th Cir. 2009), we determined that a district court maintained jurisdiction to enter summary judgment on Securities Act claims for lack of loss causation while a denial of class certification for lack of loss causation was being appealed. Even though the district court was hearing an issue that was "practically identical" to that on appeal, it could proceed because, as a matter of law, the findings on class certification would not resolve the merits issue. *Id.* at 233.

An appeal of a denial of a motion to compel arbitration does not involve the merits of the claims pending in the district court. The Supreme Court made it plain in *Moses H. Cone*, 460 U.S. at 21, that the merits were "easily severable" from the dispute over the arbitrability of those claims. The Court thus declared that because of that severability, the issue of arbitrability could be litigated in federal court while the merits were determined in state court. *Id.* An issue is generally an aspect of the case on appeal if it results in the district court's deciding an issue that the appellate court is deciding at the same time. By this reasoning, the merits are not an aspect of arbitrability. A determination on the arbitrability of a claim has an impact on what arbiter—judge or arbitrator—will decide the merits, but that determination does not itself decide the merits.

Although the majority viewpoint accurately recognizes that certain legal issues—double jeopardy, sovereign immunity, and qualified immunity—call for a broader reading of the *Griggs* jurisdictional transfer, arbitration agreements are distinguishable. In support of its broad reading of *Griggs*, the majority courts have analogized arbitrability to the above-stated issues. Each of those issues, however, is distinct from arbitration in meaningful ways.

First, double jeopardy and sovereign immunity are protections conferred by the Constitution and that courts—quite reasonably—see as different in character from rights fixed by private contracts.[3] Moreover, the Consti-

---

[3] *See Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 878 (1994) ("When a policy is embodied in a constitutional or statutory provision entitling a party to immunity from suit (a rare form of protection), there is little room for the judiciary to gainsay its 'importance.'"). Though this appeal is taken under § 16(a)(1) of the Federal Arbitration Act, the scope of the agreement regarding what issues are arbitrable is still determined just by agreement of the parties. The Act merely allows parties to contract for arbitration and have their contract enforced; it does not "entitl[e] a party to immunity from suit." *Digital Equip.*, 511 U.S. at 878.

tution entitles a party to be free from the burden of litigation when protected by the Double Jeopardy Clause[4] or sovereign immunity.[5]  Qualified immunity represents a determination that "the public interest may be better served by action taken with independence and without fear of consequences"[6] and thus has been declared to be "an entitlement not to stand trial or face the other burdens of litigation . . . .  The entitlement is an *immunity from suit* . . . ."[7] There is no public policy favoring arbitration agreements that is as powerful as that public interest in freeing officials from the fear of unwarranted litigation.    Therefore, qualified immunity, like double jeopardy and sovereign immunity, is not a sufficient analog.

## III.

Even given, as we have decided, that there is no automatic stay, the district court had the discretion to grant one.  Those who take the minority position can find solace in *C.B.S. Employees Federal Credit Union v. Donaldson*, 716 F. Supp. 307 (W.D. Tenn. 1989), for the premise that, to determine whether a discretionary stay should be granted, a district court should use the four-factor test in *Hilton v. Braunskill*, 481 U.S. 770 (1986): "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure other parties

---

[4] *Abney v. United States*, 431 U.S. 651 (1977).

[5] *Alden v. Maine*, 527 U.S. 706 (1999) (holding that freedom from suit in any court is part of the dignity inherent in states as sovereigns).

[6] *Harlow v. Fitzgerald*, 457 U.S. 800 (1982) (internal quotation marks omitted).

[7] *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

interested in the proceedings; and (4) [whether] public interest [favors a stay].'"[8]

Miller argues that a finding that he is likely to succeed on the merits is not necessary if the balance of the equities is strongly in his favor, citing *Washington Metropolitan Area Transit Commission*, 559 F.2d 841 (D.C. Cir. 1977). Our caselaw, however, is to the contrary In *Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 23 (5th Cir. 1992) (per curiam), this court determined that the four-factor test from *Baylor* must be fully applied except where there is a serious legal question involved and the balance of equities heavily favors a stay; in those situations, the movant only needs to present a substantial case on the merits. Because this is merely a private contractual matter regarding whether arbitration is required, *see id.* at 25, no substantial legal question is involved.[9]

## A.

As a preliminary matter, WRI's argument that Miller has conceded the first prong—likelihood of success on the merits—is unavailing. Miller recognizes he is at a disadvantage because the district court has already ruled against him, but still he maintained, in his district court motion for a stay, that, "[a]s stated above and set forth in detail in Mr. Miller's Motion to Compel Arbitration and Reply in Support of his Motion to Compel Arbitration . . . Mr. Miller's arguments . . . are substantial, meritorious and supported by

---

[8] *C.B.S. Employees*, 716 F. Supp. at 309 (quoting *Hilton*, 481 U.S. at 776); *accord United States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 39 (5th Cir 1983).

[9] *Cf. Baylor*, 711 F.2d at 40, in which the question concerning Medicare and Medicaid payments could have had a broad impact on relations between the states and the federal government.

Fifth Circuit case law." In the referenced section, Miller provided three reasons why he was properly entitled to arbitration.

This matter is contractually governed by the law of Colorado. Miller argues that the Limited Guarantee should be read as a Loan Document because the Limited Guarantee and the Loan Agreement pertain to the same transaction.[10] This interpretive principle "has particular force where the initial document requires execution of another to accomplish the purpose of the first" or when one party' rights depend on interpreting a series of transactions between other entities. *E. Ridge of Fort Collins, LLC v. Larimer & Weld Irrigation Co.*, 109 P.3d 969, 975 (Colo. 2005). The Limited Guarantee and Loan Agreement pertain to the same transaction, so it is best to read them together.

Such a reading, however, does not demonstrate that the arbitration provision was intended to cover the Limited Guarantee. There is no ambiguity in the materials that the Loan Agreement defined as Loan Documents. The list appears exhaustive, and because the Limited Guarantee was executed the same day, it is unlikely the parties would forget about it when listing the documents covered by "Loan Documents," when that word had such import throughout the contract.

Although the two amendments to the Loan Agreement describe "Loan Documents" as including the Limited Guarantee, those recitals are not "strictly part of the contract [and] cannot extend contractual stipulations

---

[10] *In re Application for Water Rights of the Town of Estes Park v. N. Colo. Water Conservancy Dist.*, 677 P.2d 320, 327 (Colo. 1984) ("[S]eparate instruments that pertain to the same transaction should be read together even though they do not expressly refer to each other, and even though they are not executed by the same parties.").

. . . ."[11]  Therefore, even though the recitals of the subsequent amendments refer to the Limited Guarantee as a Loan Document, it cannot extend the arbitration clause's coverage in the original Loan Agreement.  The amendments plainly state when the portions of the Loan Agreement the parties have chosen to amend begin to be described, and this occurs after the Recital describing Loan Documents.  The Limited Guarantee cannot be considered a Loan Document.

Miller further argues that the arbitration provision of the Loan Agreement covers the Limited Guarantee even if the Limited Guarantee is not a Loan Document, because the arbitration clause, ¶ 7.21 of the Loan Agreement, applies to "any controversy, dispute or claim arising out of, in connection with, or relating to the Note or any of the other Loan Documents or any transaction provided for therein."  Reading all aspects of the Limited Guarantee as a transaction provided for in the Loan Agreement is too broad, however.

Miller references three ways in which the Limited Guarantee is implicated in the Loan Agreement: (1) The Limited Guarantee had to be executed before the loan was funded;[12] (2) the Loan Agreement required various representations and warranties be made regarding the Limited Guarantee;[13] and

---

[11] *Engineered Data Prods., Inc. v. Nova Office Furniture, Inc.*, 849 F. Supp. 1412, 1417 (D. Colo. 1994) (citing *Las Animas Consol. Canal Co. v. Hinderlider*, 68 P.2d 546, 566 (Colo. 1937).

[12] Loan Agreement ¶ 2.1(b)(9).

[13] Miller provides nine warranties/representations: (1) Guarantors had power and authority to enter into the Guarantee, *id.* ¶ 5.4; (2) complying with the Loan Documents will not violate other agreements of the Borrower or Guarantors, *id.,* ¶ 5.5; (3) Guaranties are valid and were validly executed, *id.* ¶ 5.6; (4) Guarantors have filed all required tax returns and paid required taxes, id. ¶ 5.8; (5) There are no suits that would materially adversely affect Guaran-
(continued...)

10

(3) the Guarantor's failure to "perform, observe or comply with any of the terms, covenants, conditions or provisions of the Guaranties" is an event of default.[14]  But none of these has anything to do with a transaction in which the Guarantors are asked to pay their portion of the Note after the joint venture defaults.  Numbers (1) and (2) in the list above deal with the requirements for having a proper Guarantor.  Once a proper Guarantor is found and guarantees the Note, those transactions that the Loan Agreement provided for are complete.  Number (3) above does not apply, because the Note is already in default, and no transaction has occurred in which the Guarantor has brought the Note into default.  Thus, none of the transactions at issue in the Loan Agreement has occurred.  Instead, the Guarantors were merely asked to pay as they contracted to do solely in the Limited Guarantee.

Finally, Miller argues that the doctrine of equitable estoppel applies to prevent WRI from avoiding arbitration on account of Miller's being a non-signatory to the Loan Agreement.  We review for abuse of discretion the denial of a motion to compel based on estoppel.  *Grigson*, 210 F.3d 524 (5th Cir. 2000).

An arbitration agreement can be invoked by a non-signatory only in "rare circumstances."  *Westmoreland v. Sadoux*, 299 F.3d 462, 465 (5th Cir. 2002).  That can happen

> when the signatory to a written agreement containing an arbitra-

---

[13](...continued)

tors, *id.* ¶ 5.9; (6) No Guarantor is in default on any order, writ, etc., that would materially adversely affect Guarantor, *id.* ¶ 5.11; (7) Guarantors have satisfied all legal requirements for the property on which construction will occur, *id.* ¶ 5.12; (8) No Guarantor is bound by any restrictions that would materially affect business, *id.* ¶ 5.17; and (9) no Guarantor has actual knowledge of a fact that adversely affects business, *id.* ¶ 5.20.

[14] *Id.* ¶ 6.1(u).

> tion clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory.  When each of the signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate.

*Grigson v. Creative Artists Agency*, LLC, 210 F.3d 524, 527 (5th Cir. 2000) (emphasis and citations omitted).  This is based on the notion of fairness, that a signatory "cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny the arbitration's applicability because the defendant is a non-signatory." *Id.* at 528.

Miller contends that WRI's claims depend on the Loan Agreement, because Guarantors must pay when the Debtor does not perform the Guaranteed Obligations,[15] so it is necessary to determine, under the Loan Agreement, when the Guaranteed Obligations have not been fulfilled.  The Limited Guarantee is explicit, however, that whenever any Guaranteed Obligation remains unpaid, it is not necessary that WRI demand payment first from the Debtor, seek the benefits of any security for the Guaranteed Obligations, or even provide any notice of dishonor beyond the obligation's being unpaid when due.[16]  This strongly suggests the parties intended the Limited Guarantee to require payment separate from any evaluation of the Loan Agreement.  Thus, despite the fact that the Limited Guarantee was executed contemporaneously, the district court did not abuse its discretion in concluding that the Limited Guarantee is not so intertwined with and dependent on

---

[15] *Id.* ¶ 7.

[16] *Id.* ¶ 4.

the distribution agreement that arbitration should be compelled under the exceptional principle of equitable estoppel.[17]

### B.

The second factor is whether Miller will suffer irreparable injury without a stay. The only grounds for irreparable injury proffered by Miller are that he will "be required to incur the time and expense of litigation and may lose the benefits of arbitration." He cites several district court decisions that reason that because speed and cost savings are the primary purpose of arbitration, forcing him to litigate the case when it may be sent to arbitration later by the appellate court defeats the entire point of arbitration.[18]

For the reasons previously discussed, we reject the idea that arbitration ensures substantial speed and cost savings, so these considerations alone do not constitute irreparable injury.[19] Thus, the lack of an argued irreparable injury weighs against Miller.

### C.

The third factor is whether substantial injury will result to the other

---

[17] *See, e.g., ITT Hartford Life & Annuity Ins. Co. v. Amerishare Investors, Inc.*, 133 F.3d 664 (8th Cir. 1998); *Grigson*, 210 F.3d at 527.

[18] *Trefny v. Bear Stearns Sec. Corp.*, 243 B.R. 300, 309-10 (S. D. Tex 1999); *C.B.S Employees*, 716 F. Supp. at 310; *Alascon, Inc. v. ITT N. Elec. Co.*, 727 F.2d 1419, 1422 (9th Cir. 1984).

[19] In *Trefny*, 243 B.R. at 309, the court included the additional argument that Bear Stearns would have been forced to engage in discovery absent a stay, which would cause irreparable injury because such discovery could jeopardize its right to arbitrate. That, with the potential cost increases, may be an irreparable injury, particularly where parties contracted for arbitration to limit discovery of sensitive information, but it was never mentioned in Miller's briefing to this court and is therefore waived. FED. R. APP. P. 28(a)(9)(A).

parties if a stay is granted.  The only potential injury faced by WRI is delay in vindication of its claim.  WRI recognizes in its brief that that harm is "perhaps not critical;"  it never argues a stay will cause it difficulties in presenting its case.  This factor weighs in favor of Miller.

### D.

The fourth factor is whether the public interest favors a stay.  Miller argues that there is a public policy of efficient allocation of judicial resources.  Such a policy might favor staying district court proceedings where a difficult question is presented on appeal, because the district court's order could be overturned.  But Miller does not present a likelihood of success on the merits, so there is little reason to invoke the general public policy of preserving judicial resources from the risk of reversal.  Rather, the public interest in speedy resolution of disputes prevails.  Public interest favors denying the stay.

### E.

We have considered the relevant factors.  Because Miller had failed to show a likelihood of success on the merits regarding whether arbitration is required, and the balance of the equities does not support a stay, the district court correctly denied Miller's motion to stay the proceedings pending resolution of his appeal of the denial of his motion to compel arbitration.

### IV.

WRI moves for summary affirmance.  Although the notice of appeal is "from an Order Denying Arbitration entered in this action on the 12th day of September, 2011," the question of arbitrability is best determined after full

submission to a merits panel instead of being decided by this motions panel. The motion for summary affirmance is accordingly CARRIED WITH THE CASE.

The motion for stay pending appeal is DENIED.