# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 23, 2012

Lyle W. Cayce
Clerk

No. 11-30161

CHARLES GRANT; ET AL,

Plaintiffs

v.

KEVIN HOUSER; ET AL,

Defendants

-------------------------------------------------------------------------------------

MITCH BERGER,

Plaintiff - Appellee

v.

KEVIN HOUSER; SECURITIES AMERICA, INCORPORATED; AMERICAN
INTERNATIONAL SPECIALTIES LINES INSURANCE COMPANY,

Defendants - Appellants

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:10-CV-805

Before BARKSDALE, GARZA, and ELROD, Circuit Judges.

PER CURIAM:[*]

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5th Cir.
R. 47.5.4.

No. 11-30161

Before us are two interlocutory appeals from denials of motions to compel arbitration in this action. Primarily at issue is: whether the district court had jurisdiction to rule on the second motion after the appeal of the first denial; and whether sufficient evidence supports the assignment of a contract containing an arbitration clause. In challenging those denials, Kevin Houser, Securities America Inc., and American International Specialties Lines Insurance Co. (Appellants) contend the district court: lacked jurisdiction to rule on their second motion, pending the interlocutory appeal from the denial of their first motion; and, in the alternative, erred by concluding the evidence in support of arbitration was insufficient and, in the further alternative, by failing to apply equitable estoppel. In addition, they maintain all of Mitch Berger's claims are covered by the arbitration agreement. VACATED and REMANDED.

## I.

On 1 January 2004, Berger opened a securities brokerage account with Brecek & Young Advisors, Inc. (BYA). Houser, Berger's New Orleans Saints teammate and financial advisor, was BYA's registered representative for the account. In opening it, Berger filled out a "New Account Form", which he and Houser signed. This form contained an arbitration clause, located immediately above the signature lines, which stated, *inter alia*:

> It is agreed that *any controversy between* [*Berger*] *and BYA, or its registered representatives*, employees, or agents, including but not limited to those arising out of or relating to my account, transactions with or for me, investments, or this agreement, *shall be resolved by arbitration* in accordance with the rules, then applying, of the [National Association of Securities Dealers].

(Emphasis added.) That same day, Berger and Houser also signed a form entitled "Asset Based Brokerage Services (ABBS): Agreement and Disclosure", which likewise included an expansive arbitration clause.

No. 11-30161

In 2008, Houser advised Berger to invest in Louisiana Film Studios, LLC (LFS). Houser represented that the investment was backed by Louisiana tax credits and the land improvements upon which the studio was situated. Based on those representations, Berger provided a check for $250,000 to Houser, with LFS as payee.

In late 2008, Securities America acquired BYA. In early 2009, BYA assigned all of its assets and accounts, including Berger's, to Securities America. As reflected in the subsequent account statements provided to Berger by Securities America in its name, it maintained Berger's account and employed Houser as its registered representative.

Alleging his funds invested in LFS were "wasted", Berger filed this action in 2010 against Houser, Securities America, and American International (Securities America's insurer), stating claims for: violations of Louisiana Civil Code art. 1997 (bad-faith breach of contract), Louisiana Revised Statute 51:1401 *et seq.* (unfair trade practices and consumer protection law), Louisiana Civil Code art. 1967 (breach of promise that induced detrimental reliance), 15 U.S.C. § 78j(b) (the Exchange Act of 1934), and Rule 10b-5; breach of contractual, professional, and fiduciary duty; unjust enrichment; respondeat superior; liability on the part of Securities America; and liability-coverage from American International for damages caused by Houser.

In October 2010, Appellants moved to compel arbitration, based on: the arbitration agreement signed by Berger, claiming the rights under it were assigned to Securities America; and, in the alternative, equitable estoppel because Berger relies on an agreement with Securities America for his claims. In support, they provided a declaration by Kevin Miller (Miller Declaration), Vice President, Chief Compliance Officer, and Deputy General Counsel at Securities America, which stated, *inter alia:* based on his personal knowledge, in acquiring BYA, Securities America inherited all contractual rights and

3

No. 11-30161

obligations associated with BYA's accounts, including Berger's and the rights bestowed by the arbitration agreement contained in his account's contract. Berger's motion to strike the Miller Declaration was denied in November 2010. The declaration is uncontroverted.

In January 2011, through an order and reasons, the district court denied the motion to compel arbitration because:  Appellants did not provide sufficient evidence that BYA assigned the New Account Form, with its arbitration clause, to Securities America; and, in the alternative, equitable estoppel did not apply. *Charles Grant, et al v. Kevin Houser, et al*, No. 2:10-CV-805 (E.D. La. 10 Jan. 2011) (First Order). The first of the two interlocutory appeals at issue was filed in February 2011. The district court did not stay this action pending that appeal.

Between the motion to compel's being filed and denied, Berger had been permitted to file a second amended complaint, adding claims for negligent training and supervision and "selling away" (an investment professional inappropriately selling securities not offered by the brokerage firm with which he is associated). In December 2010, prior to denial of the first motion to compel arbitration, Appellants filed a similar second motion, regarding these new claims. The first order (January 2011) did not address this second motion. Instead, after the notice of appeal from the first order was filed, this second motion was denied on 9 March 2011, based on the reasoning of the first order, and also because the court ruled no evidence had been offered showing the two claims added by the second amended complaint fell within the arbitration agreement. *Grant*, No. 2:10-CV-805 (E.D. La. 9 Mar. 2011) (Second Order). Accordingly, the second of the two interlocutory appeals at issue was filed that month, concerning the second order and reasons.

II.

The Federal Arbitration Act (FAA) applies to contracts involving interstate commerce that contain or are subject to a written agreement to arbitrate. 9

No. 11-30161

U.S.C. §§ 1-2. The statute provides for "the enforcement of arbitration agreements within the full reach of the Commerce Clause", and reaches more transactions than those actually "within the flow of interstate commerce". *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (internal quotation marks omitted). Berger's contracts constitute interstate commerce under the FAA, because the sale of securities has a substantial effect on interstate commerce. *See id.* at 56-57. The arbitration agreement at issue satisfies the FAA's "agreement in writing" requirement, 9 U.S.C. § 2, because it is in writing and signed by Berger. Therefore, the terms of the FAA apply. The FAA permits an interlocutory appeal from the denial of a motion to compel arbitration. 9 U.S.C. § 16(a)(1)(C).

Appellants contend the district court: lacked jurisdiction to rule on the second motion to compel; and, in the alternative, erred by concluding the evidence was insufficient to show BYA assigned its rights to Securities America and, in the further alternative, by concluding equitable estoppel does not apply. (As discussed below, the Miller Declaration provides sufficient evidence; therefore, we need not reach equitable estoppel.) They also maintain the arbitration agreement covers all of Berger's claims.

A.

We first address district-court jurisdiction *vel non* to rule on the second motion to compel arbitration. After the briefs were filed, our court held that an interlocutory appeal from denial of a motion to compel arbitration does not divest the district court of jurisdiction to proceed to the merits. *Weingarten Realty Investors v. Miller*, 661 F.3d 904, 908–09 (5th Cir. 2011). Relying on the Supreme Court's holding in *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982), our court explained that "[a]lthough appeals transfer jurisdiction from the district court to the appellate court concerning 'those aspects of the case involved in the appeal,' the district court is nonetheless free to adjudicate

No. 11-30161

matters that are not involved in that appeal." *Weingarten*, 661 F.3d at 908 (quoting *Griggs*, 459 U.S. at 58). *Weingarten* further explained that "[a]n issue is generally an aspect of the case on appeal if it results in the district court's deciding an issue that the appellate court is deciding at the same time." *Id.* at 909. The court concluded that "because answering the question of arbitrability does not determine the merits of the case, the merits are not an aspect of the case that is involved in the appeal on arbitrability." *Id.* at 908.

Here, unlike in *Weingarten*, the first interlocutory appeal divested the district court of jurisdiction to decide the second motion to compel. That motion raised arbitrability issues that are "an aspect of the case on appeal," *id.* at 909, because it required the district court to address the same arbitrability issues involved in the first interlocutory appeal for the same purpose, *i.e.*, deciding whether to compel arbitration of Berger's claims. In other words, by deciding the second motion to compel, the district court decided arbitrability issues that this court was deciding at the same time, such as whether the Miller Declaration constitutes sufficient evidence of an assignment of contractual rights for purposes of a motion to compel arbitration. Because the district court lacked jurisdiction to decide the second motion to compel, the Second Order is vacated and our review is limited to the arbitrability of the claims covered by the First Order.

## B.

Denial of a motion to compel arbitration is reviewed *de novo. E.g.*, *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257 (5th Cir. 1996) (per curiam); *Banks v. Mitsubishi Motors Credit of Am., Inc.*, 156 F. App'x 710, 711 (5th Cir. 2005) (per curiam) (unpublished) (sufficiency of evidence of existence of arbitration agreement reviewed *de novo*). When considering a motion to compel arbitration, the court must determine:  (1) whether a valid agreement to arbitrate exists between the parties, and (2) whether the dispute at issue falls within the scope

No. 11-30161

of that agreement. *Webb*, 89 F.3d at 258. Berger does not contend there is no agreement; nor, as discussed *infra*, does he contend the disputes at issue are outside the scope of that agreement.

1.

Therefore, primarily at issue is whether the right to arbitrate, provided by that agreement, was assigned to Securities America. It is undisputed that, if it was, Securities America can enforce it under California law (the law controlling the agreement), despite Securities America's not being a signatory to the agreement. *Prograph Int'l Inc. v. Barhydt*, 928 F. Supp. 983, 991 (N.D. Cal. 1996).

In denying application of the arbitration agreement, the district court concluded:

> While Securities America argues that it is entitled to enforce the terms of the Arbitration Agreement between BYA and Berger as BYA's assignee, the Court agrees with [Berger] and finds that [Securities America has] *not supplied sufficient evidence* to support [its] claims about the extent of any such contractual assignment. [Securities America has] only supplied a generic affidavit that claims that BYA assigned all of its contracts to Securities America, *without supplying documentary evidence of such a transaction.* In addition, the Court finds that the principle of equitable estoppel does not apply in this case.

(Emphasis added.)

Review of the district court's rejection of the Miller Declaration is not for abuse of discretion, because that rejection was not a ruling on the admissibility *vel non* of that evidence; instead, it was a ruling on the merits–the sufficiency *vel non* of that evidence.  The ruling at issue is that the Miller Declaration was insufficient to show BYA assigned its rights to Securities America. The district court erred in so ruling.

7

No. 11-30161

In *Doddy v. Oxy USA, Inc.*, 101 F.3d 448 (5th Cir. 1996), our court held an affidavit in which a corporate officer attested to the fact that the corporation acquired its predecessor's assets but not its liabilities, without attaching the contract of sale evidencing the acquisition, was sufficient summary-judgment evidence when the statements in the affidavit were based on personal knowledge and did not reference the contract of sale. *Id.* at 463.   Likewise, the Miller Declaration was based on personal knowledge and did not reference the contract of sale.

Moreover, there is a strong presumption in favor of arbitration under the FAA. *See* 9 U.S.C. § 2; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Accordingly, for ruling on a motion to compel arbitration, the FAA requires "an expeditious and summary hearing, with only restricted inquiry into factual issues". *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22. The party seeking to compel arbitration need only prove the existence of an agreement to arbitrate by a preponderance of the evidence. *See Banks*, 156 F. App'x at 712.

Given this strong presumption favoring arbitration, the summary nature of a motion to compel arbitration, and our precedent in *Doddy*, the Miller Declaration is sufficient evidence–in this motion-to-compel setting–to establish the assignment of BYA's rights to Securities America by a preponderance of the evidence. *See id.* (uncontroverted affidavit sufficient to show existence of agreement by preponderance).

2.

Because of the strong presumption in favor of arbitration, the burden shifts to the party opposing arbitration to demonstrate either that the agreement is invalid or, at a minimum, to allege the dispute is outside of the agreement's scope. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004); *see also Banks*, 156 F. App'x at 712 (claims within scope because

No. 11-30161

nonmoving party did not allege claims were outside it). In this regard, the Miller Declaration is uncontroverted; no other bases in opposition to arbitration are raised.

In other words, Berger does not assert his claims are not covered by the arbitration agreement. In any event, they fall within its scope.

As the district court found, this agreement is a "broadly worded" agreement. A broad arbitration agreement is "capable of expansive reach", intended to cover "all aspects of the relationship"; a dispute then need only "touch matters covered" by the agreement in order to compel arbitration. *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067-68 (5th Cir. 1998). Furthermore, our court has held that a broadly worded arbitration agreement covers claims related to private investments outside of the brokerage firm. *See Downer v. Siegel*, 489 F.3d 623, 627 (5th Cir. 2007).

This agreement covers "any controversy" between the parties or its registered agents. In the light of this, and similar, language in the agreement, our precedent, and the federal-law preference for arbitration, all of Berger's claims over which we have jurisdiction fall within the scope of the arbitration agreement.[1]

## III.

For the foregoing reasons, the district court's 10 January 2011 order is VACATED, the district court's 9 March 2011 order is VACATED for lack of jurisdiction, and this matter is REMANDED for further proceedings consistent with this opinion.

---

[1] Because the district court lacked jurisdiction to enter its Second Order, Berger's negligent training and supervision and "selling away" claims addressed therein are not properly before us and we express no opinion regarding whether or not they are covered by the arbitration agreement.  That is a question for the district court in the first instance.

No. 11-30161

RHESA HAWKINS BARKSDALE, Circuit Judge, dissenting in part.

I respectfully dissent from the majority's holding in part II.A. at 6 that "the district court lacked jurisdiction to decide the second motion to compel", which concerned Berger's second amended complaint, pending resolution of the appeal from the earlier denial of the first motion to compel, which concerned Berger's amended complaint.

As discussed in the majority opinion at 4, the second amended complaint was filed after the first motion to compel was filed, but before the First Order, which denied that motion. Except for new paragraphs 40-43, which added two new claims, the second amended complaint was identical to the amended complaint. "[A]n amended complaint ordinarily supersedes the [preceding complaint] and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading". *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985). Because the second amended complaint did neither, it superseded the amended complaint.

As such, the first motion to compel, and resulting First Order, concerned a complaint that carried "no legal effect" when that order was issued. *See id.* On the other hand, the second motion to compel and corresponding Second Order (issued after the notice of appeal from the First Order was filed), addressed the new claims in the second amended complaint, which was the operative, or "live", complaint and included all of Berger's claims, new and old. The reasoning and ruling in the Second Order were a continuation and validation of those in the First Order. Therefore, the district court had jurisdiction to enter the Second Order insofar as it brought completion and *legal effect* to the arbitrability determination.

In any event, pursuant to *Weingarten Realty Investors v. Miller*, 661 F.3d 904 (5th Cir. 2011), and contrary to the majority's analysis, the district court had

10

jurisdiction to issue the Second Order. *Weingarten* held an interlocutory appeal from denial of a motion to compel arbitration does not automatically divest the district court of jurisdiction to proceed with other issues in that action. *Id.* at 908. Instead, the district court maintains jurisdiction over matters not involved in the appeal. *Id.*; *see also Alice L. v. Dusek*, 492 F.3d 563, 564-65 (5th Cir. 2007). Consistent with that, the district court did not stay this action pending the appeal from the First Order.

"A narrow interpretation is normally appropriate" when a court addresses how broadly to define the aspects of an appeal. *Weingarten*, 661 F.3d at 908. The aspects of Appellants' first appeal, when narrowly interpreted, can be defined as the arbitrability *vel non* of the claims stated in Berger's amended complaint and addressed in Appellants' first motion to compel. As discussed, Berger's second amended complaint raised two new claims not addressed in that first motion to compel. As such, Appellants' second motion to compel, and the resulting Second Order, only addressed claims not included in the First Order.

This framing of the "aspects on appeal" is supported by precedent. In *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982), the Court held jurisdiction was divested when a notice of appeal challenging a judgment was filed while a motion to amend that judgment was pending. *See Weingarten*, 661 F.3d at 909 (summarizing *Griggs*). On the other hand, in *Alaska Electrical Pension Fund v. Flowserve Corp.*, 572 F.3d 221 (5th Cir. 2009), our court held jurisdiction was not divested when an appeal was filed on a matter (denial of class certification) distinct from that being addressed in a motion in district court (loss-causation on the merits), despite the fact that "the two issues [were] practically identical". *Id.* at 233; *see also Weingarten*, 661 F.3d at 909 (discussing *Alaska Electrical*).

In the action at hand, the second motion to compel addressed distinct/new claims from those on appeal. Therefore, a stay pending appeal not having been

No. 11-30161

imposed by the district court, it had jurisdiction to rule on the second motion, despite the dispositive issue in each (arbitrability *vel non*) being identical. To hold otherwise impermissibly exalts form over substance, resulting in unnecessary delay in resolution of this action, waste of scarce judicial resources, and needless expense for the parties.

Accordingly, under either basis, the district court had jurisdiction to rule on the second motion to compel arbitration, resulting in the appeal from the denial of that motion being properly before our court for resolution now. Therefore, I respectfully dissent from the majority's holding the district court lacked such jurisdiction.