PER CURIAM: *
Before us are two interlocutory appeals from denials of motions to compel arbitration in this action. Primarily at issue is: whether the district court had jurisdiction to rule on the second motion after the appeal of the first denial; and whether sufficient evidence supports the assignment of a contract containing an arbitration clause. In challenging those denials, Kevin Houser, Securities America Inc., and American International Specialties Lines Insurance Co. (Appellants) contend the district court: lacked jurisdiction to *312 rule on their second motion, pending the interlocutory appeal from the denial of their first motion; and, in the alternative, erred by concluding the evidence in support of arbitration was insufficient and, in the further alternative, by failing to apply equitable estoppel. In addition, they maintain all of Mitch Berger’s claims are covered by the arbitration agreement. VACATED and REMANDED.
I.
On 1 January 2004, Berger opened a securities brokerage account with Brecek & Young Advisors, Inc. (BYA). Houser, Berger’s New Orleans Saints teammate and financial advisor, was BYA’s registered representative for the account. In opening it, Berger filled out a “New Account Form”, which he and Houser signed. This form contained an arbitration clause, located immediately above the signature lines, which stated, inter alia:
It is agreed that any controversy between [Berger] and BYA, or its registered representatives, employees, or agents, including but not limited to those arising out of or relating to my account, transactions with or for me, investments, or this agreement, shall be resolved by arbitration in accordance with the rules, then applying, of the [National Association of Securities Dealers].
(Emphasis added.) That same day, Berger and Houser also signed a form entitled “Asset Based Brokerage Services (ABBS): Agreement and Disclosure”, which likewise included an expansive arbitration clause.
In 2008, Houser advised Berger to invest in Louisiana Film Studios, LLC (LFS). Houser represented that the investment was backed by Louisiana tax credits and the land improvements upon which the studio was situated. Based on those representations, Berger provided a check for $250,000 to Houser, with LFS as payee.
In late 2008, Securities America acquired BYA. In early 2009, BYA assigned all of its assets and accounts, including Berger’s, to Securities America. As reflected in the subsequent account statements provided to Berger by Securities America in its name, it maintained Berger’s account and employed Houser as its registered representative.
Alleging his funds invested in LFS were “wasted”, Berger filed this action in 2010 against Houser, Securities America, and American International (Securities America’s insurer), stating claims for: violations of Louisiana Civil Code art.1997 (bad-faith breach of contract), Louisiana Revised Statute 51:1401 et seq. (unfair trade practices and consumer protection law), Louisiana Civil Code art.1967 (breach of promise that induced detrimental reliance), 15 U.S.C. § 78j(b) (the Exchange Act of 1934), and Rule 10b — 5; breach of contractual, professional, and fiduciary duty; unjust enrichment; respondeat superior; liability on the part of Securities America; and liability-coverage from American International for damages caused by Houser.
In October 2010, Appellants moved to compel arbitration, based on: the arbitration agreement signed by Berger, claiming the rights under it were assigned to Securities America; and, in the alternative, equitable estoppel because Berger relies on an agreement with Securities America for his claims. In support, they provided a declaration by Kevin Miller (Miller Declaration), Vice President, Chief Compliance Officer, and Deputy General Counsel at Securities America, which stated, inter alia: based on his personal knowledge, in acquiring BYA, Securities America inherited all contractual rights and obligations associated with BYA’s accounts, including Berger’s and the rights bestowed by the *313 arbitration agreement contained in his account’s contract. Berger’s motion to strike the Miller Declaration was denied in November 2010. The declaration is uncon-troverted.
In January 2011, through an order and reasons, the district court denied the motion to compel arbitration because: Appellants did not provide sufficient evidence that BYA assigned the New Account Form, with its arbitration clause, to Securities America; and, in the alternative, equitable estoppel did not apply. Charles Grant, et al v. Kevin Houser, et al, No. 2:10-CV-805, 2011 WL 121906 (E.D. La. 10 Jan, 2011) (First Order). The first of the two interlocutory appeals at issue was filed in February 2011. The district court did not stay this action pending that appeal.
Between the motion to compel’s being filed and denied, Berger had been permitted to file a second amended complaint, adding claims for negligent training and supervision and “selling away” (an investment professional inappropriately selling securities not offered by the brokerage firm with which he is associated). In December 2010, prior to denial of the first motion to compel arbitration, Appellants filed a similar second motion, regarding these new claims. The first order (January 2011) did not address this second motion. Instead, after the notice of appeal from the first order was filed, this second motion was denied on 9 March 2011, based on the reasoning of the first order, and also because the court ruled no evidence had been offered showing the two claims added by the second amended complaint fell within the arbitration agreement. Grant, No. 2:10-CV-805, 2011 WL 121906 (E.D. La. 9 Mar. 2011) (Second Order). Accordingly, the second of the two interlocutory appeals at issue was filed that month, concerning the second order and reasons.
II.
The Federal Arbitration Act (FAA) applies to contracts involving interstate commerce that contain or are subject to a written agreement to arbitrate. 9 U.S.C. §§ 1-2. The statute provides for “the enforcement of arbitration agreements within the full reach of the Commerce Clause”, and reaches more transactions than those actually “within the flow of interstate commerce”. Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003) (internal quotation marks omitted). Berger’s contracts constitute interstate commerce under the FAA, because the sale of securities has a substantial effect on interstate commerce. See id. at 56-57, 123 S.Ct. 2037. The arbitration agreement at issue satisfies the FAA’s “agreement in writing” requirement, 9 U.S.C. § 2, because it is in writing and signed by Berger. Therefore, the terms of the FAÁ apply. The FAA permits an interlocutory appeal from the denial of a motion to compel arbitration. 9 U.S.C. § 16(a)(1)(C).
Appellants contend the district court: lacked jurisdiction to rule on the second motion to compel; and, in the alternative, erred by concluding the evidence was insufficient to show BYA assigned its rights to Securities America and, in the further alternative, by concluding equitable estop-pel does not apply. (As discussed below, the Miller Declaration provides sufficient evidence; therefore, we need not reach equitable estoppel.) They also maintain the arbitration agreement covers all of Berger’s claims.
A.
We first address district-court jurisdiction vel non to rule on the second *314 motion to compel arbitration. After the briefs were filed, our court held that an interlocutory appeal from denial of a motion to compel arbitration does not divest the district court of jurisdiction to proceed to the merits. Weingarten Realty Investors v. Miller, 661 F.3d 904, 908-09 (5th Cir.2011). Relying on the Supreme Court’s holding in Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982), our court explained that “[although appeals transfer jurisdiction from the district court to the appellate court concerning ‘those aspects of the case involved in the appeal,’ the district court is nonetheless free to adjudicate matters that are not involved in that appeal.” Weingarten, 661 F.3d at 908 (quoting Griggs, 459 U.S. at 58, 103 S.Ct. 400). Weingarten further explained that “[a]n issue is generally an aspect of the case on appeal if it results in the district court’s deciding an issue that the appellate court is deciding at the same time.” Id. at 909. The court concluded that “because answering the question of arbitrability does not determine the merits of the case, the merits are not an aspect of the case that is involved in the appeal on arbitrability.” Id. at 908.
Here, unlike in Weingarten, the first interlocutory appeal divested the district court of jurisdiction to decide the second motion to compel. That motion raised ar-bitrability issues that are “an aspect of the case on appeal,” id. at 909, because it required the district court to address the same arbitrability issues involved in the first interlocutory appeal for the same purpose, i. e., deciding whether to compel arbitration of Berger’s claims. In other words, by deciding the second motion to compel, the district court decided arbitra-bility issues that this court was deciding at the same time, such as whether the Miller Declaration constitutes sufficient evidence of an assignment of contractual rights for purposes of a motion to compel arbitration. Because the district court lacked jurisdiction to decide the second motion to compel, the Second Order is vacated and our review is limited to the arbitrability of the claims covered by the First Order.
B.
Denial of a motion to compel arbitration is reviewed de novo. E.g., Webb v. Investacorp, Inc., 89 F.3d 252, 257 (5th Cir.1996) (per curiam); Banks v. Mitsubishi Motors Credit of Am., Inc., 156 Fed.Appx. 710, 711 (5th Cir.2005) (per curiam) (unpublished) (sufficiency of evidence of existence of arbitration agreement reviewed de novo). When considering a motion to compel arbitration, the court must determine: (1) whether a valid agreement to arbitrate exists between the parties, and (2) whether the dispute at issue falls within the scope of that agreement. Webb, 89 F.3d at 258. Berger does not contend there is no agreement; nor, as discussed infra, does he contend the disputes at issue are outside the scope of that agreement.
1.
Therefore, primarily at issue is whether the right to arbitrate, provided by that agreement, was assigned to Securities America. It is undisputed that, if it was, Securities America can enforce it under California law (the law controlling the agreement), despite Securities America’snot being a signatory to the agreement. Prograph Int’l Inc. v. Barhydt, 928 F.Supp. 983, 991 (N.D.Cal.1996).
In denying application of the arbitration agreement, the district court concluded:
While Securities America argues that it is entitled to enforce the terms of the Arbitration Agreement between BYA and Berger as BYA’s assignee, the *315 Court agrees with [Berger] and finds that [Securities America has] not supplied sufficient evidence to support [its] claims about the extent of any such contractual assignment. [Securities America has] only supplied a generic affidavit that claims that BYA assigned all of its contracts to Securities America, without supplying documentary evidence of such a transaction. In addition, the Court finds that the principle of equitable estoppel does not apply in this case.
(Emphasis added.)
Review of the district court’s rejection of the Miller Declaration is not for abuse of discretion, because that rejection was not a ruling on the admissibility vel non of that evidence; instead, it was a ruling on the merits-the sufficiency vel non of that evidence. The ruling at issue is that the Miller Declaration was insufficient to show BYA assigned its rights to Securities America. The district court erred in so ruling.
In Doddy v. Oxy USA, Inc., 101 F.3d 448 (5th Cir.1996), our court held an affidavit in which a corporate officer attested to the fact that the corporation acquired its predecessor’s assets but not its liabilities, without attaching the contract of sale evidencing the acquisition, was sufficient summary-judgment evidence when the statements in the affidavit were based on personal knowledge and did not reference the contract of sale. Id. at 463. Likewise, the Miller Declaration was based on personal knowledge and did not reference the contract of sale.
Moreover, there is a strong presumption in favor of arbitration under the FAA. See 9 U.S.C. § 2; see also Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Accordingly, for ruling on a motion to compel arbitration, the FAA requires “an expeditious and summary hearing, with only restricted inquiry into factual issues”. Moses H. Cone Mem’l Hosp., 460 U.S. at 22, 103 S.Ct. 927. The party seeking to compel arbitration need only prove the existence of an agreement to arbitrate by a preponderance of the evidence. See Banks, 156 Fed.Appx. at 712.
Given this strong presumption favoring arbitration, the summary nature of a motion to compel arbitration, and our precedent in Doddy, the Miller Declaration is sufficient evidence-in this motion-to-compel setting-to establish the assignment of BYA’s rights to Securities America by a preponderance of the evidence. See id. (uncontroverted affidavit sufficient to show existence of agreement by preponderance).
2.
Because of the strong presumption in favor of arbitration, the burden shifts to the party opposing arbitration to demonstrate either that the agreement is invalid or, at a minimum, to allege the dispute is outside of the agreement’s scope. Carter v. Countrywide Credit Indus., Inc., 362 F.3d 294, 297 (5th Cir.2004); see also Banks, 156 Fed.Appx. at 712 (claims within scope because nonmoving party did not allege claims were outside it). In this regard, the Miller Declaration is uncontro-verted; no other bases in opposition to arbitration are raised.
In other words, Berger does not assert his claims are not covered by the arbitration agreement. In any event, they fall within its scope.
As the district court found, this agreement is a “broadly worded” agreement. A broad arbitration agreement is “capable of expansive reach”, intended to cover “all aspects of the relationship”; a dispute then need only “touch matters covered” by the agreement in order to compel arbitration. Pennzoil Exploration & Prod. Co. v. Ram *316 co Energy Ltd., 139 F.3d 1061, 1067-68 (5th Cir.1998). Furthermore, our court has held that a broadly worded arbitration agreement covers claims related to private investments outside of the brokerage firm. See Downer v. Siegel, 489 F.3d 623, 627 (5th Cir.2007).
This agreement covers “any controversy” between the parties or its registered agents. In the light of this, and similar, language in the agreement, our precedent, and the federal-law preference for arbitration, all of Berger’s claims over which we have jurisdiction fall within the scope of the arbitration agreement.[1]
III.
For the foregoing reasons, the district court’s 10 January 2011 order is VACATED, the district court’s 9 March 2011 order is. VACATED for lack of jurisdiction, and this matter is REMANDED for further proceedings consistent with this opinion.

 Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

. Because the district court lacked jurisdiction to enter its Second Order, Berger's negligent training and supervision and "selling away" claims addressed therein are not properly before us and we express no opinion regarding whether or not they are covered by the arbitration agreement. That is a question for the district court in the first instance.