# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-41745

United States Court of Appeals
Fifth Circuit

**FILED**
October 3, 2016

Lyle W. Cayce
Clerk

ELMER SIERRA, Individually and as Next Friend of L.O.B.; NORMA SIERRA, Individually and as Next Friend of L.O.B.,

>  Plaintiffs – Appellants,

v.

DOREL JUVENILE GROUP, doing business as Cosco Home and Office Products,

>  Defendant – Appellee.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:12-CV-232

Before HIGGINBOTHAM, ELROD, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Elmer Sierra purchased an extension ladder from Dorel Juvenile Group, Inc. He alleges that a manufacturing defect in the devices that hold the ladder in an extended position caused the ladder to collapse beneath him. Sierra brought a product liability suit against Dorel.[1] After the jury returned

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Norma Sierra and a minor child, L.O.B., are also appellants.

No. 15-41745

a verdict in Dorel's favor, Sierra moved for a new trial under Federal Rule of Civil Procedure 59. The district court denied this motion, and Sierra appealed. Because we conclude that there is some evidence in the record to support the jury's verdict, we AFFIRM the district court's order denying Sierra's Rule 59 motion.

## I.

Sierra claims to have been injured when he fell off of an extension ladder that had been sold to him by Dorel.[2] The accident allegedly occurred because two of the "rail-locks"[3] that secure the ladder in an extended position failed, causing the ladder to collapse.

Sierra brought a product liability suit against Dorel in Texas court, which Dorel removed to federal court based on diversity jurisdiction. To prevail on his claim, Sierra had to prove that the ladder contained a manufacturing defect and that this defect caused the ladder to collapse. To this end, Sierra sought to prove that the ladder's rail-locks were damaged at the time he purchased the ladder from Dorel and that this damage caused the rail-lock pins to slip out of the holes in the ladder rails, which in turn caused the ladder to collapse. At trial, both parties' experts agreed that the ladder's rail-locks were damaged; both experts also agreed that the damage could not have been caused through normal use, but instead required a unique set of circumstances, including significant amounts of torque and heat. The experts

---

[2] The ladder was manufactured by a different company. However, the parties do not dispute in this appeal that Dorel may be held liable for injuries resulting from manufacturing defects in the ladders it sells.

[3] A rail-lock is the part of an extension ladder that holds it in an extended position so that a user can safely climb the ladder without having it collapse back into a non-extended position. A rail-lock contains a spring loaded pin that is inserted into a hole in the outer rail of the ladder. The spring then pushes the pin through the outer hole and into the corresponding hole in the inner rail.

2

## No. 15-41745

disagreed, however, on whether the damage occurred during manufacture or sometime afterward.

After a three day trial, the jury returned a verdict in Dorel's favor, having concluded that the ladder did not contain a manufacturing defect. Sierra then moved for a new trial under Federal Rule of Civil Procedure 59, but the district court denied this motion based on its assessment that "there is ample evidence to support the verdict." Sierra timely appealed.

### II.

Federal Rule of Civil Procedure 59 authorizes district courts to, *inter alia*, "grant a new trial on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Fed. R. Civ. P. 59(a)(1). Under this Circuit's precedents, "'[a] trial court should not grant a new trial on evidentiary grounds unless the verdict is against the great weight of the evidence.'" *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 269 (5th Cir. 1998) (quoting *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998)). Whether a verdict is against the great weight of evidence is a question committed to the district court's sound discretion. *Id.*

Because of the deference owed district courts in this context, the denial of a motion for a new trial "will be affirmed unless, on appeal, the party that was the movant in [the] district court makes a 'clear showing' of *'an absolute absence of evidence to support the jury's verdict*,' thus indicating that the trial court . . . abused its discretion in refusing to find the jury's verdict 'contrary to the great weight of the evidence.'" *Id.* (quoting *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1049 (5th Cir. 1998)); *see also Bank One, Tex., N.A. v. Taylor*, 970 F.2d 16, 35 (5th Cir. 1992) ("As an appellate court, we . . . will overturn a district court's denial of a motion for new trial only if there is an 'absolute absence of evidence to support the jury's verdict.'" (quoting *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1140 (5th Cir. 1991))).

No. 15-41745

## III.

Sierra argues that the district court abused its discretion in denying his Rule 59 motion because "there is no evidence that the ladder could have been damaged after the manufacturing process" was complete and the ladder was fully assembled. In support of this argument, Sierra points us to his expert's testimony that the torque and heat needed to damage the rail-locks would necessarily produce plastic shavings.[4] By Sierra's logic, if the rail-locks were damaged after manufacture (*i.e.*, when the ladder was fully assembled), plastic shavings would have been deposited within the hollow part of the ladder's rung. According to Sierra's expert, however, there were very few plastic shavings found within the ladder. Sierra concludes from this that "[t]he only plausible explanation for the absence of plastic shavings in [the] ladder is that the rail locks were spun and damaged before the ladder was assembled," and therefore the defect must have been present at the time Dorel sold the ladder to Sierra.

This argument is a complete *non sequitur*. Sierra's burden is not to show that there is some evidence to support his case; it is to show that there is no evidence to support the jury's verdict. *See Whitehead*, 163 F.3d at 269. So even if we were to assume that the near absence of plastic shavings in the ladder's rung is strong—even powerful—evidence in Sierra's favor, that fact would not bring him one step closer to proving an absence of any evidence to support the jury's verdict. Moreover, even if Sierra had attempted to make the necessary showing, he would not have been successful because the record reveals that Dorel presented evidence on which the jury could have relied in

---

[4] Dorel's expert acknowledged that the test protocols he ran generated varying amounts of plastic shavings.

4

concluding that Sierra's ladder did not contain a manufacturing defect that is causally-connected to Sierra's injuries.[5]

Dorel presented the testimony of Mr. Voris—a former Director of Product Development at Dorel. Mr. Voris testified to having observed the manufacturing process for Dorel's ladders "on hundreds of occasions," and he provided the jury with detailed information on the quality-control and safety measures built into that process to weed-out defective equipment. Based on these safety measures, he testified that the rail-locks could not have been damaged during the manufacturing process. Likewise, Dorel's expert, Dr. Knox, concluded that "there was no opportunity in the manufacturing process for [this type of damage to the rail-locks] to occur." Sierra's expert, by contrast, admitted that he had no direct or indirect knowledge of the manufacturing process or its safety features, and so he could not identify with any specificity how the rail-locks might have been damaged during the

---

[5] While Sierra maintains that the near absence of plastic shavings in the ladder's rung is powerful evidence in his favor, there is evidence in the record that could have led the jury to conclude otherwise. The district court twice forbade Sierra's counsel from eliciting testimony on this subject from his expert because the expert had not previously relied on the near absence of plastic shavings in the rail rung as evidence that the rail-locks were damaged during manufacture. When the district court finally did allow Sierra's expert to testify on this subject, he conceded that none of his prior reports had articulated this theory. The jury could have concluded that Sierra's expert was inventing new theories at trial and therefore accorded his testimony little weight.

Sierra also argues that "Dorel's expert did not know, and could not opine or explain, why there were no plastic shavings in the hollow cavity of Sierra's ladder." In fact, Dorel's expert did explain that different amounts of plastic shavings could be generated depending on the amount of torque and force applied to the rail-lock while still producing the same form of damage. So while Dorel's expert did not focus on the amount of plastic shavings produced, the jury could have credited his explanation for why there were few plastic shavings in the ladder's rung.

manufacturing process.[6] The jury could well have relied on Mr. Voris's and Dr. Knox's testimony to conclude that the ladder likely was not manufactured with damaged rail-locks.

Further, Dorel's expert was able to replicate the damage to the rail-locks on a fully assembled test-ladder—*i.e.*, a ladder in its *post*-manufacture state—thus demonstrating for the jury that the rail-locks could have been damaged after the ladder was manufactured and in Sierra's possession. Sierra's expert acknowledged that Dr. Knox had successfully recreated the type of damage present on the ladder's rail-locks, and he conceded the possibility that the rail-locks were damaged after the ladder was manufactured.

We need not belabor the point. All of this evidence—and more—was presented to the jury along with Sierra's expert's testimony regarding the near absence of plastic shavings in the ladder's rung. The jury was certainly entitled to credit the evidence supporting Dorel's theory over that supporting Sierra's. Though another jury might have weighed the evidence differently, all that matters for resolving this appeal is that the record contains some evidence on which this jury could have relied in reaching its verdict. Accordingly, Sierra has not made "a clear showing of an absolute absence of evidence to support the jury's verdict." *Whitehead*, 163 F.3d at 269 (emphasis omitted) (internal quotation marks omitted).

---

[6] For example, Sierra's expert testified that he did not "have to know specifically how [the] ladder was manufactured," and that he simply "kn[e]w" that there was an opportunity for someone to use a drill to damage the rail-locks. But Dorel's expert—who possesses personal knowledge of the manufacturing process—testified that the persons assembling the ladders do not have access to a drill and, in fact, that drills are not stored in the same building.

No. 15-41745

## IV.

Because there is evidence in the record on which the jury could have relied in reaching its verdict, we AFFIRM the district court's denial of Sierra's Rule 59 motion for a new trial.[7]

---

[7] Dorel asks us to remand this case so the district court can rule on a pending Show Cause order involving improper contact with jurors that occurred after trial had ended. The district court itself stated that it would rule on the Show Cause order "if and only if the case is remanded from the Fifth Circuit." No. 1:12-cv-232, ECF 101.

We do not believe a remand is necessary or appropriate because the district court never lost jurisdiction over the Show Cause order. While it is true that the filing of a notice of appeal "confers jurisdiction on the court of appeals," it only "divests the district court" of jurisdiction "over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam). "[T]he district court is . . . free to adjudicate matters that are not involved in [the] appeal . . . ." *Weingarten Realty Inv'rs v. Miller*, 661 F.3d 904, 908 (5th Cir. 2011).

The conduct underlying the Show Cause order occurred after trial was completed and a final judgment was entered, and so it is not related to the merits of this appeal. Accordingly, because the Show Cause order is not "involved in [this] appeal," *Griggs*, 459 U.S. at 58, the district court remains "free to adjudicate" that order. *Weingarten*, 661 F.3d at 908. We express no opinion on the merits of that order.