FILED
COURT OF APPEALS DIV. I
STATE OF WASHINGTON

2018 DEC -3 AM 10: 44

## IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| PETER GRAHAM and SUZANNE GRAHAM, husband and wife<br><br>Respondents,<br><br>v.<br><br>JEFFERY A. MASCIO, and MERIDIAN CAPITAL ADVISORS LLC, a Colorado Limited Liability Company<br><br>Appellants. | No. 76967-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br><br><br><br><br><br>FILED: December 3, 2018 |

ANDRUS, J. — Jeffery A. Mascio and his company, Meridian Capital Advisors LLC (jointly referred to as Meridian), appeal the $1.5 million judgment entered against them. Meridian argues the trial court erred in finding it waived the right to arbitrate this dispute and in entering summary judgment under the Securities Act of Washington, ch. 21.20 RCW. We affirm.

## FACTS

Suzanne and Peter Graham hired Meridian to provide investment advice. On May 20, 2011, they executed an Investment Management Agreement under which Meridian managed their investment portfolio. The Grahams generally agreed that Meridian had full discretion to invest, buy, sell and trade within their investment accounts, but the Grahams informed Meridian that they desired a

conservative, long-term investment strategy. They sent Meridian's president, Jeffery A. Mascio, an email informing him that their investment goals were to ensure the ability to pay for their children's college educations, to have sufficient resources to assist aging parents who might need financial support, and to provide for their own retirement. In August 2011, Meridian prepared a "Retirement Policy Statement" for the Grahams in which Meridian assessed the Grahams' retirement needs and made recommendations for investing based on these needs. Under this assessment, Meridian identified the Grahams' short-term investment risk tolerance to be "moderate."[1]

Paragraph VI of the 2011 agreement contained a "Pre-Dispute Arbitration Agreement" clause that provided:

> In consideration of opening one or more [Meridian] accounts, Client agrees that any dispute between Client and [Meridian] relating to Client's Account, transactions with or for Client, or this Agreement shall be settled by arbitration under the rules of the American Arbitration Association, except to the extent set forth herein. The arbitration panel shall consist of at least three individuals, with at least one panelist having knowledge of investment advisory activities. Client understands and acknowledges that:
>
> a. Pre-arbitration discovery is generally more limited than and is different from court proceedings.
> b. The arbitrators' award is not required to include factual findings or legal reasoning, and any party's right to appeal or seek modification of rulings by the arbitrators is strictly limited.

---

[1] Meridian defined the "moderate" risk tolerance as:

> This range will best suit the investor who seeks relatively stable growth from their investable assets offset by a low level of income. An investor in the moderate risk range will have a higher tolerance for risk and/or a longer time horizon than either of the [very conservative or conservative] investors. The main objective of an individual within this range is to achieve steady portfolio growth while limiting fluctuations to less than those of the overall stock markets.

The foregoing does not preclude other rights or remedies the Client may have under the federal or any applicable state securities laws.

In May 2015, at Meridian's urging, the Grahams opened accounts with Interactive Brokers and transferred their investments previously held in Charles Schwab accounts. Meridian also asked the Grahams to sign a new Investment Management Agreement. When Peter Graham received a copy of the documents to sign, he noted multiple risk warnings he was asked to accept. He sent an email to Mascio, which read in pertinent part, "I'd just like [to] make sure we're not going to be jumping into a bunch of speculative or highly leveraged trading that I don't have a good understanding of. Please confirm." Graham sent this email because the Interactive Brokers account appeared to permit trading in riskier and more exotic securities than he was comfortable with.

Mascio responded that

All of the disclosure[s] are to give you access to the full capabilities of [Interactive Brokers]. These include international Exchanges such as China and Europe, FOREX, Futures, options on futures, [etc]. We will most likely never access the full spectrum of capabilities and will not be venturing into high risk high speculation markets.

(emphasis added). Mascio admitted the Grahams signed the 2015 agreement only after they received this confirmation from him.

The 2015 agreement also contained an arbitration clause, but the language differed from the 2011 agreement:

IX. ARBITRATION.

Client hereby agrees that all controversies and disputes which may arise between Client and Advisor concerning any transaction or the construction, performance, or breach of this Agreement between Client and Advisor, whether entered into prior to, on, or subsequent to the date hereof, shall be determined by mandatory and binding

arbitration. Client understands that this Agreement to arbitrate does not constitute a waiver of the right to seek a judicial forum where such waiver would be void under federal securities laws. Any arbitration shall be held in the City of Denver, State of Colorado, administered by the American Arbitration Association (the "AAA") pursuant to the Federal Arbitration Act in accordance with this Agreement and the Commercial Arbitration Rules of the AAA. . . . To the extent that any inconsistency exists between this Agreement and such statutes or rules, this Agreement shall control. Judgement [sic] upon the award rendered by the arbitrators may be entered in and enforced by any court having jurisdiction and in accordance with the practice of such court.

In August 2015, Meridian executed a series of highly speculative margin trades in a security known as "VXX." According to Mark Whitmore, the Grahams' securities expert, the Chicago Board Options Exchange publishes an index known as VIX to track the volatility of options for stocks comprising the Standard & Poor's 500. The VIX index is not a security and cannot be directly traded, but VXX is a traded security, the value of which is based on changes in the VIX index. VXX is highly volatile and unpredictable, posing tremendous risk. Meridian engaged in a strategy known as a "synthetic short" of VXX in the Grahams' accounts. This purchase and sale strategy is effectively a bet that the value of the underlying asset, the VXX security, will decrease.

The VXX short maneuver turned out to be a very bad bet. The value of VXX increased, rather than decreased. Because Meridian had placed the bet "on margin," essentially borrowing money from Interactive Brokers to fund the VXX purchases, when the Grahams began losing money, Interactive Brokers' margin requirements led to the automatic sale of securities in the Grahams' account to pay off the debt owed to Interactive Brokers. As a result, between August 21 and 25, 2015, the Grahams lost over $1 million.

On January 22, 2016, the Grahams sued Meridian in King County Superior Court, alleging negligence, negligent misrepresentation, breach of fiduciary duty, Consumer Protection Act claims, and claims under the Securities Act of Washington. On February 4, 2016, after Meridian expressed a desire to arbitrate these claims, the Grahams filed an arbitration demand with the American Arbitration Association (AAA). The Grahams filed a document entitled "Demand for Arbitration, Consumer Arbitration Rules," and they requested a hearing in Seattle, Washington. They sought and obtained an unopposed order staying the lawsuit pending the arbitration.

On March 7, 2016, AAA notified the parties it had determined its Consumer Arbitration Rules applied to the dispute.[2] AAA notified Meridian that because it had not registered its arbitration clause with AAA's Consumer Clause Registry, as required by R-12 of the organization's rules,[3] Meridian needed to pay an additional fee to expedite review of the clause. In addition, it stated that under its Consumer Rules, Meridian was required to pay a filing fee of $2,200 and an arbitrator deposit of $1,500 for each of the three arbitrators. It requested payment of a total of $6,950

---

[2] AAA is a national organization that provides neutrals to administer out-of-court resolution of disputes between parties to a contract. What We Do, AM. ARB. ASS'N, https://www.adr.org/Arbitration [https://perma.cc/PV9H-ARSH]. It has developed different sets of procedural rules for different types of disputes, including Commercial Arbitration Rules and Consumer Arbitration Rules. Rules, Forms & Fees, AM. ARB. ASS'N, https://www.adr.org/Rules (last visited Nov. 16, 2018). Under Consumer Rule R-1(a)(4), the Consumer Arbitration Rules apply to any dispute where the parties' agreement selects AAA to administer the dispute and the arbitration agreement is contained in a "consumer agreement," even if the agreement specifies a particular set of rules other than the Consumer Arbitration Rules.

[3] R-12 provides that if a business wishes to have AAA administer consumer arbitrations, it should provide the organization with a copy of the arbitration agreement at least 30 days before the planned effective date of the contract. Upon receipt, AAA will "review the agreement for material compliance with due process standards contained in the Consumer Due Process Protocol and the Consumer Arbitration Rules." If AAA declines to administer a dispute because the business does not comply with this rule, "the parties may choose to submit their dispute to the appropriate court."

by March 21, 2016. AAA notified Meridian that if it did not make the requested payment, "the AAA may decline to administer this dispute."

Meridian did not respond because, as Mascio later testified, he wanted to force the Grahams to arbitrate in Denver, Colorado, pursuant to the venue provision in the 2015 agreement. He stated he contacted AAA by telephone and was informed if he paid the fees, the arbitration would move forward in Seattle. So he refused to pay and did not respond to AAA.

AAA issued a second letter on March 28, 2016, again seeking payment of fees from Meridian and setting April 11, 2016, as the new deadline. AAA notified Meridian, in bold text:

> Please note: should the business not comply with our request by the above response date, we may decline to administer any other consumer disputes involving this business and request that the business remove the AAA name from its arbitration clause so that there is no confusion to the public regarding our decision. Furthermore, pursuant to the R-1(d) of the Consumer Arbitration Rules, should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution.

AAA inquired whether the Grahams were willing to pay the fees owed by Meridian and to seek recovery of the fees through the arbitrator's award. But AAA made it clear that "Claimant is not obligated to pay respondent's fee."

Again, Meridian did not respond. On April 24, 2016, AAA notified the parties that it was closing its file and declining to administer the case because of Meridian's non-payment. AAA also indicated it may decline to administer future consumer disputes involving Meridian and asked it to remove the AAA from its arbitration clause so that there would be no confusion to the public regarding its decision.

On May 6, 2016, the Grahams filed a motion to lift the stay in King County Superior Court, arguing that Meridian had waived any right it had to arbitrate based on its non-responsiveness to AAA and AAA's refusal to administer the case. Mascio argued to the Grahams that the initial arbitration demand the Grahams filed did not reflect the parties' 2015 agreement requiring arbitration in Denver, Colorado.[4] The Grahams decided to withdraw the motion to lift the stay and to refile an arbitration demand with AAA.

In the meantime, on May 11, 2016, Meridian sought to register its arbitration clause with AAA. On June 22, 2016, AAA acknowledged receipt of Meridian's request. It notified Meridian, however, that under AAA's Consumer Rules and due process standards set out in AAA's Consumer Due Process Protocol,[5] Meridian's venue clause violated Protocol Principle 7, which requires consumer arbitration to occur in any "reasonably convenient location." AAA asked Meridian to confirm it was willing to waive the venue provision of its clause so that AAA could administer consumer-related disputes.

On July 18, 2016, the Grahams filed a second arbitration proceeding with AAA, this time attaching both the 2011 and 2015 agreements. On August 2, 2016,

---

[4] In their renewed motion to lift the stay, filed August 12, 2016, the Grahams represented that Meridian submitted opposition materials to the first motion to lift the stay. These documents are not part of the record on appeal.

[5] AAA "provides for fair administration of consumer disputes—and will exercise its authority to decline administration of arbitration demands where an arbitration clause contains material violations of the AAA Consumer Due Process Protocol, developed in 1998 in cooperation with representatives from government agencies, consumer interest groups, education institutions, and businesses." AM. ARB. ASS'N, https://www.adr.org/Consumer (last visited Nov. 16, 2018). Principle 7 provides that "the proceedings should be conducted at a location which is reasonably convenient to both parties with due consideration of their ability to travel and other pertinent circumstances." If the parties cannot agree on a location, the determination should be made by the arbitrator.

AAA refused, for a second time, to administer the claim because "the business failed to comply with AAA's policies regarding consumer claims." It noted that Meridian had failed to timely submit its share of the filing fees, failed to waive the invalid venue clause, and failed to register its consumer clause on AAA's Consumer Clause Registry. Once again, it closed its file and reiterated that under R-1(d) of the Consumer Arbitration Rules, "either party may choose to submit its dispute to the appropriate court for resolution."[6]

The Grahams renewed their motion to lift the stay two weeks later. Mascio, representing himself and apparently Meridian, opposed the motion, arguing that the Grahams were trying to circumvent the venue provision within the arbitration clause by demanding arbitration in Seattle. He claimed he was willing to arbitrate with AAA, but only in Denver, Colorado, per the "[l]ocale mandate in the Agreement." At the same time, he stated he had submitted a revised arbitration clause to AAA to meet its consumer due process requirements. The revised clause removed the Denver venue provision and instead required the arbitration to occur in "a reasonably convenient location." Mascio asked the trial court to require the parties to arbitrate in Denver or, alternatively, to remand the case to AAA to arbitrate under the modified arbitration agreement.

---

[6] R-1(d) provides:

> The AAA administers consumer disputes that meet the due process standards contained in the Consumer Due Process Protocol and the Consumer Arbitration Rules. The AAA will accept cases after the AAA reviews the parties' arbitration agreement and if AAA determines the agreement substantially and materially complies with the due process standards of these Rules and the Consumer Due Process Protocol. Should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution.

The Grahams, however, then presented evidence that even if AAA subsequently approved Meridian's modified arbitration clause, AAA would apply it only to future disputes. Furthermore, AAA would not reconsider its decision to reject administration of the Grahams' dispute against Meridian.

The trial court lifted the stay, finding that by failing to pay the arbitration fees, and failing to take other steps required by AAA, Meridian irrevocably waived the right to arbitrate this dispute.

In early October 2016, the Grahams served sets of requests for admissions on both Meridian and Mascio. Neither responded. Based on the failure to deny any of the Grahams' allegations, the Grahams filed a motion for default or summary judgment as to all of their claims.[7] Counsel appeared for Meridian on March 3, 2017, and filed an answer to avoid entry of default judgment. Meridian opposed the summary judgment motion, asking the court to reconsider the finding that it had waived the right to arbitrate. For the first time, Meridian contended its non-participation in the two AAA proceedings was justified because the Grahams had initiated the arbitrations under the wrong set of AAA's rules. Meridian argued that its "opposition to participating in arbitration initiated pursuant to the wrong arbitration provision, in the wrong venue, and under the wrong arbitration rules ultimately resulted in this Court's August 23, 2016 order in which it found that [Meridian and Mascio] waived their right to arbitrate." It also argued that genuine

---

[7] The record shows that Meridian filed a motion to compel arbitration in the United States District Court for the District of Colorado, Civil Case No. 17-cv-00162, and filed its own demand for arbitration with AAA, seeking to arbitrate in Denver, Colorado, under AAA's Commercial Arbitration Rules. These documents were included as exhibits to the Grahams' counsel's declaration in reply to their motion for default or summary judgment.

issues of fact existed as to whether Meridian had the contractual authority to make the VXX margin trades under the terms of the 2015 agreement, precluding summary judgment on the Securities Act of Washington (WSSA) claim.

On May 9, 2017, the trial court denied Meridian's request for reconsideration as untimely and granted the Grahams' motion for summary judgment only as to their WSSA claim. It subsequently entered judgment in their favor for $1,070,915.40 in damages, $209,136.57 in prejudgment interest, $229,332.00 in attorney fees and $4,042.86 in costs.

Meridian appeals.

## ANALYSIS

Meridian raises two issues on appeal. First, it contends the trial court erred in finding it waived its right to arbitrate. Second, it argues the trial court erred in granting summary judgment under the WSSA.

A. Waiver of Arbitration

First, Meridian contends the trial court lacked jurisdiction to decide whether the company waived the right to arbitrate, arguing the arbitrator, not the trial court, must determine whether conduct constitutes a waiver. Although Meridian did not raise this jurisdictional argument with the trial court, lack of trial court jurisdiction is a claimed error that may be raised for the first time on appeal. RAP 2.5(a).

Whether a court has subject matter jurisdiction is a question of law reviewed de novo. ZDI Gaming, Inc. v. State ex rel. Wash. State Gambling Comm'n, 173 Wn.2d 608, 624, 268 P.3d 929 (2012). Subject matter jurisdiction is the authority of a court to hear and determine the class of action to which a case belongs, not

the authority to grant the relief requested. Harting v. Barton, 101 Wn. App. 954, 960, 6 P.3d 91 (2000), review denied, 142 Wn.2d 1019, 16 P.3d 1266 (2001). An arbitration clause in a contract does not divest the trial court of subject matter jurisdiction; it merely conditions a lawsuit and, as such, may be waived. Id. at 961; see also Pedersen v. Klinkert, 56 Wn.2d 313, 320, 352 P.2d 1025 (1960); see generally Schuster v. Prestige Senior Mgmt., LLC, 193 Wn. App. 616, 376 P.3d 412 (2016) (surveying federal law and state law on waiver of arbitration before concluding defendant had waived right to arbitrate). Thus, we conclude that Meridian's claim of waiver does not divest the trial court of subject matter jurisdiction.

Next, Meridian argues that it was contractually entitled to have an arbitrator decide the Grahams' waiver defense, contending at oral argument that the Grahams should have paid the fees Meridian refused to pay so an arbitrator could address its waiver claim. Questions of arbitrability are reviewed de novo. Heights at Issaquah Ridge Owners Ass'n v. Burton Landscape Group, Inc., 148 Wn. App. 400, 404, 200 P.3d 254 (2009).

We recognize that arbitration is a matter of contract, and "courts must 'rigorously enforce' arbitration agreements according to their terms." Am. Exp. Co. v. Italian Colors Rest., 570 U.S. 228, 233, 133 S. Ct. 2304, 186 L. Ed. 2d 417 (2013) (quoting Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 221, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985)). This court previously stated that procedural questions growing out of the dispute and bearing on its final disposition should be left to the arbitrator. Yakima Cty. Law Enf't Officers Guild v. Yakima Cty., 133 Wn.

App. 281, 288, 135 P.3d 558 (2006). It noted "[t]he arbitrator should decide 'allegation of waiver, delay, or a like defense to arbitrability.'" Id. (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)); see also Heights at Issaquah Ridge, 148 Wn. App. at 407 (whether time limits bar arbitration should be decided by arbitrator as threshold question).

Meridian's arbitration clause, however, provides that the Federal Arbitration Act (FAA) governs any dispute with the Grahams. Because Meridian's agreement invoked the FAA, the parties reside in different states, and the securities transactions at issue affect interstate commerce, we follow case law interpreting that statute. Grant v. Houser, 469 F. App'x 310, 313 (5th Cir. 2012) (investor's claims against broker governed by FAA because sale of securities has substantial effect on interstate commerce); Walters v. A.A.A. Waterproofing, Inc., 120 Wn. App. 354, 358-59, 85 P.3d 389 (2004) (FAA applies where agreement affects interstate commerce).

Under the FAA, a court is only permitted to stay a court action pending arbitration if "the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3 (emphasis added); see also Marie v. Allied Home Mortgage Corp., 402 F.3d 1, 12-13 (1st Cir. 2005). This language places a statutory command on courts to decide the waiver issue themselves. Marie, 402 F.3d at 13. As the First Circuit recognized in Marie, sending a waiver claim to an arbitrator would be "exceptionally inefficient."

> A waiver defense is raised by one party to a lawsuit in response to another party's motion to compel arbitration or stay judicial

proceedings on the basis of an arbitration agreement signed by the parties. If the arbitrator were to find that the defendant had waived its right to arbitrate, then the case would inevitably end up back before the district court with the plaintiff again pressing his claims. The cause would have bounced back and forth between tribunals without making any progress.

Id. at 13-14. Thus, under federal case law interpreting the FAA, Meridian was not entitled to have an arbitrator determine the Grahams' waiver argument if it was in "default" in the AAA proceedings. Id.; see also Martin v. Yasuda, 829 F.3d 1118, 1123 (9th Cir. 2016) (citing cases where every circuit addressing issue of whether court or arbitrator should decide if party waived its right to arbitrate through inconsistent litigation conduct has concluded that issue is for court, and not arbitrator, to decide).

Next, Meridian contends its failure to pay the AAA's fees was justified by the fact that the Grahams chose the wrong locale and the wrong set of rules in their demands for arbitration. It argues because it had no obligation to participate in the AAA proceedings in the first place, it could not be in default. Whether Meridian defaulted in an arbitration under the FAA is a question of fact, reviewed by this court for clear error. Sink v. Aden Enters., Inc., 352 F.3d 1197, 1199 (9th Cir. 2003). If a party is found to be in default, it will be deemed to have waived the right to arbitrate. Marie, 402 F.3d at 13.

The trial court found that Meridian failed to pay AAA's fees and failed to comply with its other procedural requirements. It is undisputed that, as a result, AAA refused to administer the arbitration between the Grahams and Meridian. The trial court's findings are supported by substantial evidence in this record. Meridian admits it did not pay AAA's requested fees, did not answer either of the two

arbitration demands, did not respond in writing to any of the AAA's letters, did not challenge AAA's determination that the Consumer Rules, rather than the Commercial Rules, applied to the case, and did not timely waive the Denver venue clause to which AAA objected. As a result, AAA refused to administer any case between the Grahams and Meridian. Failure to pay AAA fees has routinely been held to constitute a default under the FAA. Pre-Paid Legal Servs., Inc. v. Cahill, 786 F.3d 1287, 1294 (10th Cir. 2015); Johnson v. Ret. Plan of General Mills, Inc., No. 4:16-cv-00151-TWP-DML, 2018 WL 3630275, at *3 (S.D. Ind. July 31, 2018). There is no reasonable conclusion to draw from this evidence other than that Meridian was in default in the arbitration proceedings. Thus, because Meridian defaulted in the arbitration proceeding, under the FAA, it was not entitled to have an arbitrator determine whether it waived its right to arbitrate.

Additionally, Meridian's argument that the Grahams' initiated the arbitration proceedings in the wrong location and under the wrong rules ignores the AAA rules to which Meridian agreed by contract. First, under both AAA's Commercial Rules and Consumer Rules, it is the AAA, and not the parties, who determines which set of rules will apply to a dispute. R-1 of the Commercial Rules provides that "[a]ny disputes regarding which AAA rules shall apply shall be decided by the AAA."[8] R-1(e) of the Consumer Rules similarly provides:

> The AAA has the initial authority to apply or not to apply the Consumer Arbitration Rules. If either the consumer or the business disagrees with the AAA's decision, the objecting party must submit the objection by the due date for filing an answer to the demand for

---

[8] American Arbitration Association, Commercial Arbitration Rules & Mediation Procedures 10 (2013), https://www.adr.org/sites/default/files/CommercialRules_Web.pdf.

<u>arbitration</u>. If an objection is filed, the arbitrator shall have the authority to make the final decision on which AAA rules will apply.

(emphasis added). When the Grahams filed their first demand for arbitration, AAA determined that the Consumer Rules applied to the dispute. Meridian had, by contract, agreed to follow AAA's procedure for challenging this decision. Yet, it refused to do so. R-1(e) does not place the burden on the Grahams; it places the burden to object on Meridian.[9]

The fact that the Grahams did not pay the fees Meridian was assessed does not change our analysis. AAA's Consumer Rules set out the schedule of administrative and case management fees, providing that the business must bear these expenses. AAA computed the fees Meridian had to pay and notified it that non-payment would result in the organization's refusal to administer the dispute. Meridian chose not to respond or to pay. While Mascio testified that he thought payment of the fees would set the locale in Seattle, the trial court could find this testimony not credible given its inconsistency with AAA rules. Under these rules, the Grahams' initiation of arbitration in Seattle was not dispositive for the location of the arbitration. R-11 of the Consumer Rules provides that the locale for the arbitration will be set only after considering "the positions of the parties, the circumstances of the parties and the dispute, and the <u>Consumer Due Process Protocol</u>." Had Meridian paid the assessed fees, it would have had the opportunity

---

[9] The Grahams provided evidence to the trial court that in January 2017, Meridian filed its own arbitration demand, invoking AAA's Commercial Rules and selecting Denver as the locale for the proceeding. In March 2017, AAA notified the parties that it still considered the dispute to be a consumer dispute and concluded that its Consumer Rules applied. Thus, the Grahams' invocation of the consumer rules in the first two demands was immaterial.

to challenge the Grahams' request to arbitrate in Seattle. Simply failing to respond is not consistent with the AAA rules.

Moreover, Meridian's contention that Seattle was the wrong locale presumes the Denver venue provision was enforceable. AAA clearly notified Meridian that the venue provision violated its <u>Consumer Due Process Protocol</u>, and the organization sought a waiver of this provision to be consistent with its protocol. Meridian submitted a new clause—minus the Denver venue provision—for AAA's consideration and registration in late July 2016, but in early August 2016, AAA refused to administer any claims between Meridian and its consumers. AAA also refused to apply the new clause retroactively to the Grahams.

It was undisputed that AAA refused to arbitrate this case because of Meridian's noncompliance with AAA rules and policies:

> Prior to the filing of this arbitration, the business failed to comply with the AAA's policies regarding consumer claims. Accordingly, we must decline to administer this claim and any other claims between Meridian Capital Advisors, LLC and its consumers. . . .
>
> On a previously-filed consumer matter, this business did not timely submit its share of the filing fees and/or failed to waive a provision in its consumer contract that the AAA identified as a material and substantial deviation from the Protocol. The AAA sent correspondence informing the business that it may decline to administer consumer arbitrations involving this business and requested that the business remove the AAA from its consumer arbitration agreements so that there would be no confusion to the public.
>
> In addition, Meridian Capital Advisors, LLC has not complied with our request to register its consumer clause on the AAA's Consumer Clause Registry . . . .
>
> Accordingly, we have administratively closed our file and will refund any payment received by the filing party. According to R-1(d)

of the Consumer Arbitration Rules, should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution.

The trial court did not err in concluding that Meridian waived its right to arbitrate because it failed to pay arbitration fees and to take steps required by the AAA. Accord Sink, 352 F.3d at 1199-1200 (nonpayment of costs of arbitration constituted waiver).

Finally, Meridian contends the Grahams suffered no prejudice as a result of its noncompliance with AAA rules. It is unclear whether under the FAA, federal courts require a showing of prejudice. Schuster, 193 Wn. App. at 637. At least two circuit courts have either de-emphasized prejudice or concluded that waiver may be found absent a showing of prejudice. Id. at 637-38 (citing Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc., 50 F.3d 388, 390 (7th Cir. 1995); St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co., 969 F.2d 585, 590 (7th Cir. 1992); Nat'l Found. For Cancer Research v. A.G. Edwards & Sons, Inc., 821 F.2d 772, 777 (D.C. Cir. 1987)).

We need not decide this issue here because "delay amounts to prejudice when there is no good excuse for it." Steele v. Lundgren, 85 Wn. App. 845, 858, 935 P.2d 671, review denied, 133 Wn.2d 1014, 946 P.2d 401 (1997). The superior court case was stayed for six months while the Grahams attempted to pursue arbitration. Discovery was postponed while the Grahams waited to see if Meridian would comply with AAA's rules. Furthermore, Meridian provides no good excuse for its delay in responding to AAA's repeated entreaties. It refused to engage in AAA's process for reasons that are not justified by any evidence in the record.

Therefore, we affirm the trial court's ruling that Meridian waived the right to arbitrate the dispute with the Grahams.

B. Summary Judgment Under WSSA

Next, Meridian argues the trial court erred in granting the Grahams' motion for summary judgment under the WSSA. This court reviews a summary judgment order de novo, performing the same inquiry as the trial court. Herron v. Tribune Publ'g Co., 108 Wn.2d 162, 169, 736 P.2d 249 (1987). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," demonstrate that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Becker v. Wash. State Univ., 165 Wn. App. 235, 245-46, 266 P.3d 893, 899 (2011).

The Grahams asserted claims under RCW 21.20.010 and 21.20.020(1)(a) and (b) of the WSSA. RCW 21.20.010 provides:

> It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:
>
> (1) To employ any device, scheme, or artifice to defraud;
>
> (2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or
>
> (3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

RCW 21.20.020 makes it unlawful for an investment advisor to employ any scheme to defraud investors or to engage in any act that would operate as a fraud on investors. In addition, RCW 21.20.702 provides that recommended investments

must be suitable for the customer. This is known as the "suitability rule." RCW 21.20.430 creates a private cause of action against sellers of securities for alleged violations of RCW 21.20.010, Hines v. Data Line Sys., Inc., 114 Wn.2d 127, 135-36, 787 P.2d 8 (1990), but it does not create a private cause of action against investment advisors for violations of RCW 21.20.020 or RCW 21.20.702. Ives v. Ramsden, 142 Wn. App. 369, 390, 174 P.3d 1231 (2008). Courts may, however, consider an advisor's non-compliance with the suitability rule as evidence of a breach of duty that the advisor owes to his customers. Id. at 390-91.

On summary judgment, the Grahams argued Meridian violated RCW 21.20.020 and RCW 21.20.010(1), (2), and (3) by employing a scheme to defraud them, by making an untrue statement of material fact in connection with the purchase and sale of VXX securities, and by engaging in practices that operated as a fraud or deceit on them. Given that the only statutory provision under which the WSSA judgment can be affirmed is RCW 21.20.010, we must examine the undisputed evidence in the record to determine if any genuine issues of material fact exist.[10]

The Grahams presented undisputed evidence[11] that on May 27, 2015, Mascio represented to Peter Graham that he and Meridian would not be "venturing

---

[10] The Grahams cited the suitability rule of RCW 21.20.702 but argued that this rule defined Meridian's common law duty of care. They did not seek judgment under the WSSA based on a violation of the suitability rule. To the extent the trial court based its ruling on the suitability rule, we agree that would be legal error. However, we may sustain the trial court's judgment on any alternative theory established by the pleadings and supported by the proof. Wendle v. Farrow, 102 Wn.2d 380, 382, 686 P.2d 480 (1984).

[11] Because neither Mascio nor Meridian responded to the Grahams' requests for admission of facts, the trial court treated those that did not seek legal conclusions as admitted, which Meridian does

into high risk[,] high speculation markets," but on the day he made this representation, he intended to do the exact opposite. Meridian and Mascio admitted the Grahams had not authorized Mascio to make the VXX transactions, the transactions were not suitable securities transactions for them, and the VXX short sales were high risk, high speculation trades, which exposed the Grahams' investment portfolio to unlimited risk. Meridian and Mascio admitted the Grahams had instructed Mascio that preserving investment capital was a top priority.

Meridian argued below and on appeal that the terms of the 2015 agreement provided Mascio with the contractual authorization to engage in the risky, speculative trades. But according to Peter Graham's undisputed testimony, the 2015 agreement permitted trading in riskier and more exotic securities than he and his wife were comfortable with, and he sought confirmation that Mascio would not be engaging in that type of trading before the Grahams signed the 2015 agreement. Mascio admitted he sent his confirming email before the Grahams executed the 2015 agreement. Moreover, Meridian's argument and Mascio's testimony contradict their admissions that the Grahams never authorized this type of risky investment and specifically instructed Mascio not to enter into this type of speculative trade. A party may not create a genuine issue of fact by presenting declaration testimony that contradicts previous admissions. Dep't of Labor & Indus. v. Kaiser Alum. & Chem. Corp., 111 Wn. App. 771, 778, 48 P.3d 324 (2002).

---

not challenge on appeal. CR 36; Melby v. Hawkins Pontiac, Inc., 13 Wn. App. 745, 748, 537 P.2d 807 (1975) ("The plaintiff's requests for admissions, because they were not timely answered, must be treated as admitted."); see also Peralta v. State, 187 Wn.2d 888, 900, 389 P.3d 596 (2017) (an admission is "conclusively established" if party does not seek to withdraw or amend it); Santos v. Dean, 96 Wn. App. 849, 861, 982 P.2d 632 (1999) ("[A] party is not required to admit legal conclusions under CR 36.").

The undisputed evidence also establishes that Meridian's untrue statement of fact was the proximate cause of the Grahams' losses. Meridian and Mascio admitted that Interactive Brokers liquidated the Grahams' stock portfolio because the VXX transactions they conducted placed the portfolio outside of Interactive Brokers' margin requirements. They also admitted that as a direct result of the VXX transactions, the Grahams' investment portfolio lost cash value of at least $1,070,915.40. This evidence establishes proximate cause as a matter of law.

For these reasons, the judgment against Meridian and Masco is affirmed. The Grahams are the prevailing party on appeal and are awarded attorney fees under RCW 21.20.430(1) and RAP 18.1.

Andrus, J.

WE CONCUR: